Our final case of the morning is 116844, People of the State of Illinois ex rel. Joseph Pusateri v. Peoples Gas Light & Coke Co. Are you ready to proceed? Good morning, your honors. May it please the court, my name is Tim Eaton. I represent Peoples Gas, the appellant in this matter. Your honors, the essence of plaintiff's complaint is that amounts to a de facto refund for the state based on alleged excessive rates that the state paid for natural gas delivery by Peoples Gas during some unknown period of time based upon alleged false reports on how quickly Peoples Gas responded to reports of gas leaks. But there never was a claim made by Peoples Gas to the state or to the ICC within the meaning of the Whistleblower Act or the False Claim Act as it's now referred to since 2010. And plaintiff's allegations amount to nothing more than a collateral attack on a base rate that was set by the ICC for natural gas delivery to all customers in Illinois, not just the state. As this court stated in Scheffler, the fact that plaintiff seeks money, damages from a utility, does not change the fact that the plaintiff is trying to circumvent the exclusive jurisdiction of the ICC by undermining a rate, a base rate that has been set by them. Plaintiff admits that these safety reports were submitted to the ICC in a legislative process where the ICC considers Peoples Gas tariff rates for natural gas delivery that will be incurred in the future. There was no claim or bill paid by the ICC or the state to Peoples Gas. The submission of the safety report was not in conjunction with a claim for money from the state by the plaintiff's own allegations. Most importantly, the rate making process is a legislative process as this court is well aware, based on the argument earlier this morning, which involves expertise on the part of the commission to determine what is an appropriate base rate based on a formula and based upon the expertise of the ICC. Contrary to plaintiff's argument, safety reports have historically never been considered in a base rate process. They were mentioned in the case cited by the plaintiff, the Madigan case repeatedly cited by the plaintiff, because a special infrastructure improvement was being considered, a special rider, where the maintenance of the gas pipelines were relevant and therefore safety reports were actually considered. In over 40 years of ICC opinions, there has never been a reference to a safety report. But more importantly, a claim under the False Claim Act should not be injected in a rate making legislative process, because as the dissent pointed out in the appellate court very aptly, this does not involve a government procurement process. This is not a government bill. This is a situation where once a tariff is submitted, as this court is aware, again from I know handling numerous ICC cases, once a tariff is submitted by the utility, the commission then determines whether or not it's just and reasonable. By suspending the tariff that's been submitted and by holding hearings, there are five commissioners with specialized expertise. There are staff that testify as to what those rates should be. That's why to inject a claim in a situation like this where you're asking the circuit court to determine, well, what impact did this safety report have on ultimately determining the rate that was set for this period of time? And once then the circuit court determines this rate based on I'm not sure what, because there would be no administrative record there like there would have been before the commission. There would have been no specialized expertise like there would have before the commission, then you're to subtract the amount of the excessive rate from what the rate would have been and there would have been damages. But I might add that refund would only go to the state. It would not go to all the consumers that also paid that base rate if in fact it was excessive. And this court has said repeatedly, starting with Illinois Bell's switching case which we cite in our brief, that the commission cannot approve rates that are different for different types of consumers. Here that's exactly what would happen. It would undermine the base rate concept here that the commission has exclusive jurisdiction over. If you were to allow a circuit court to say you're entitled to a refund but you're not. The plaintiff has taken the position that that issue has been forfeited, was not preserved. I'm aware of that, Your Honor. And we have said from day one in our motion to dismiss, this is not a claim. And we have said that repeatedly throughout. And in that argument why it should not be construed as a claim, we've talked about the process by which the rate making process takes place. This was also pointed out, I might add, by the dissent in the appellate court where the appellate court justice said, Justice Palmer, this is not an appropriate place for this claim or this type of allegation to be made because this is not a government procurement process which is exactly the argument I'm making this morning, exactly the argument we've made in our briefs here. Because that's a legislative process. And therefore it just doesn't fit. So that has not been waived or forfeited. From day one we have said this is not a claim. Council has also raised the issue that we're saying the Whistleblower Act is unconstitutional. No. We've never said that. All we're saying is trying to harmonize two different provisions that if you construe them the way Plaintiff wants to, would be in conflict. If you construe them the way we want to, they would be harmonized. Because there is nothing wrong with having a claim filed when you're dealing with a government bill. We're not suggesting that's unconstitutional. And there's nothing wrong with the Public Utilities Act giving exclusive jurisdiction to the ICC to make rates. It's where you try to combine the two and don't harmonize them that the conflict exists. Would we be immunizing falsehoods in negotiations with the ICC? Under the Public Utilities Act 5522.1, it authorizes the ICC to issue a civil penalty for misrepresentations of fact made to the ICC during a proceeding. Section 5109 provides it willfully making false reports to or withholding information required to be produced from the ICC is a class A misdemeanor. The ICC has authority to address this not only in the Public Utilities Act but under the Gas Pipeline Safety Act where the legislature has given them jurisdiction to subject public utilities to civil penalties if they falsify or otherwise fail to keep adequate and accurate pipeline safety records. All of these sites are contained in page 37 and 38 of our main So, Your Honor, there is a remedy. But this isn't it. Because this statute, the whistleblower statute was derived from the Federal Claims Act which goes back to the Civil War where the government was being taken advantage of by corrupt ammunition manufacturers where they were charging excessive amounts to the government. They were inflating bills. So the False Claim Act made it a crime and a penalty to inflate those bills. That's the origin of it. We do not have a claim here for money. And the way that the False Claim Act on the federal level has been interpreted, they have said that where it's not a direct claim for money or property, it's not a claim. And we cite the process by which companies were submitting bids to be picked as the vendor. So if we should find that it is a claim, then is it forfeited? I'm sorry? If we should find that it is a claim, would your arguments be forfeited for not having, would you forfeit that argument then? No, Your Honor. I don't believe so. I mean, well, first of all, we believe that it's not a claim for a variety of reasons. And we think the public policy behind not finding a claim far exceeds any statutory intent that the legislature intended when they passed the Whistleblower Act. Because to harmonize, again, the legislative intent under the Whistleblower Act and the legislative intent under the Public Utilities Act to give exclusive jurisdiction, it seems that you do not have to claim. And then furthermore, if it was a claim, Your Honor, then you could look at some of the other factors in the federal cases that we've decided. First of all, the falsity of the claim has to relate or trigger a payment. Here we're dealing with alleged falsity of the safety report where there's nothing alleged that would indicate that that would trigger some sort of procurement and some sort of payment. What happens, as this Court is well aware, is that the ICC sets a rate and then those who purchase the gas decide how much they want to purchase at that rate, and then they're sent a bill. And the Gabelli case says, in interpreting the False Claim Act at the federal level, you can't have it one or two or three steps removed. It has to be a direct claim for money or property. And what's missing from plaintiff's briefs and from the appellate court analysis is there's been no case cited where this has ever been permitted or construed as a claim. And I think as this Court stated in Sheffler, that where you're seeking money damages, in that case that implicated rate making, which clearly here you are implicating rate making because you're having to deal with retroactive rate making, you're having to deal with refunds, you're having to deal with single issue rate making, all of which has been prohibited by this Court, it clearly implicates rate making. And as Sheffler said, under those circumstances, the ICC has exclusive jurisdiction. Mr. Eden? Yes, sir. You indicated there is a remedy for alleged false reports separate and apart from this. You articulated that, I think, in response to Chief Justice Garmon's question. How, when would that be effectuated? As soon as it came to the attention of the ICC by a report, it could be a report by the company who could have discovered it and then reported that this was going on by some of their management officials. It could have been reported by Mr. Pusateri. Now, he wouldn't have the financial incentive that he has under the False Claim Act to report it, but if he thought this was wrong, and by the way, he was engaged in this conduct by his own admission, if he thought this was wrong, he could have reported to the ICC and then the ICC could have imposed any of those remedies. And as this Court well knows, a utility is not going to get crossways with the ICC. If it comes to our attention, we're going to report it because we do not want to have anything that would jeopardize our future relationship with them since we are a highly regulated utility. We are highly regulated at every step of the way. So this False Claim Act isn't needed as a remedy, and moreover, as a matter of public policy, this is not a claim. Because again, if it's a claim, you are getting into this whole area of collaterally attacking a rate that's already been set. And as this Court also knows, is that after a rate has been set, we have to continue charging that rate until the ICC allows us not to charge it. And so what you would have under these circumstances is the Circuit Court making a determination somehow, without the expertise to do so, that this was an excessive rate. Ordering a refund to the state only, and we would have to continue charging that rate, because under the ICC's jurisdiction we have no discretion, the Circuit Court has no discretion to say this rate is excessive, it's going to be lowered to everybody. We would have to continue charging that rate to the state and to those consumers indefinitely until there's been a new rate considered by the ICC. It just doesn't make sense in this context to suggest that a claim can be found here, where you're talking about a legislative rate-making process. And when the ICC approves a tariff, it becomes a law. And to attack a law based upon a fault safety report, when there are all these other remedies, this Court would really have to extend the meaning of claim under the Whistleblower Act tenfold. It makes no sense to do that, because it's going to create uncertainty. And it's also going to create uncertainty as to those rates going forward. This case was sent to the Attorney General's office in 2009. It took them two years to decide, we don't want anything to do with it, Mr. Pusteri, you go ahead. It's now 2014. We don't know what rate we're talking about, by the way, because that's not clear from the complaint. That could be amended, so maybe we'd find out. It's been five years. In the meantime, there's uncertainty. Is this rate going to be changed or not? Is there going to be a refund or not? How can a judge decide that based upon this one or multiple, we don't know, fault safety reports, that the rate would have been different? There's no way to determine that. A judge would not have that type of expertise, as this court said in Scheffler, and as this court has said repeatedly, it requires a certain level of expertise. And without that expertise, you'd be putting the trial court in a very difficult situation to make that type of determination. So we simply believe that there is no way that the plaintiff, under these circumstances, can state a cause of action where it implicates the rate-making process of the commission. And that is our argument, plain and simple. And that's why it would not have been appropriate for the trial judge to allow an amended complaint, which plaintiffs have raised in their briefs. Because under these circumstances, if it involves rate-making, and somehow you could construe, Your Honor, a false safety report to be a claim, even though it doesn't request money or property from the state, even if that were true, it directly undermines the exclusive jurisdiction of the ICC under these circumstances. And there's no way to cure it. So an amended complaint, as long as we're talking about a rate-making process, would make no sense. Mr. Eden? Yes, Your Honor. And I understand your argument. I just want to run this by you, that if I understand the allegations of the plaintiff on these changing the, they were trying to avoid the generation of a report. Yes. And so what I want to know is how does the report, if it had been generated, how would that impact ICC's reliance or non-reliance on reaching a rate-increased determination? Well, Your Honor, that's a very good question. Because the, I understand we're at a motion to dismiss stage. And I understand that all well-pleaded allegations have to be deemed as true. But here you have two allegations that are totally inconsistent with one another. In paragraph 17 of the motion to dismiss, they say that they are lowering the time so it's under an hour, so it doesn't have to fill out a form and it doesn't have to be reported. In paragraph 22, they're saying these reports that brought it under the time are submitted to the ICC. It makes no sense. If they're lowering the amount of time so they don't have to report, then they didn't report. But then paragraph 22 says they did report. So it is unclear to me. But what plaintiff has said, another allegation, is that once these reports that were purportedly submitted, it went to the overall safety record of the utility and that somehow that was taken into consideration when they based the rate and came to that conclusion. But again, as we've said, the Madigan case, which is cited by the plaintiff, dealt with a special rider dealing with infrastructure improvement where safety reports were relevant. It doesn't deal with any revenue issue. And the other thing that seems counterintuitive, if you're trying to get an increase in rate, you would want to have a report that showed that you couldn't meet those response times because you either need more staff or they're coming in too quickly, so you're looking for more money for that reason. You wouldn't hide something that would be to your benefit, it seems to me, if you're really talking about money. So that's what doesn't make any sense. I respectfully request that this court reverse the bill. Thank you. Thank you. May it please the court, counsel. Chief Justice Gurman, I think your question... I apologize. David Novoselsky on behalf of the plaintiff's families. Thank you. Proceed. The argument really being submitted is we're immune from the whistleblower act because as a practical result, it doesn't matter whether there was or wasn't something that we withheld, there is no remedy. And to say that the remedy is, well, the commission can enter a fine that's, if you look at the overall amount of money issue, that's really nothing. They can issue a criminal charge, which again is not a remedy. We have two different statutes, if you will, or groups of statutes. The whistleblower act was intended to prevent private companies or utilities, they're not excluded, from making money by making false statements to the government. There's no question here we keep hearing, there's no claim because really none of this is money. Well, a rate is money. A rate is money. You charge a rate and you're paid that rate. The state of Illinois has never been disputed pays for gas from people's gas. No, I think it's Wisconsin gas. I know they were just acquired. So as far as there is no claim in the sense of the act, I respectfully disagree. Now, if you accept their argument that, let's take for a given that under the whistleblower act, Mr. Pusatary had a valid issue, that these reports were falsified. The argument people's gas is presenting to the court is it doesn't matter whether they're falsified. It really doesn't matter whether the state of Illinois, because of these reports, paid more than it should because the ICC has exclusive jurisdiction to set the rate. If we agree with you, wouldn't this require the trial court to determine what the rate should have been? Because you just referenced they paid more than they should. So we know what they paid, how do we determine, how would a trial court determine what they should have paid? Well, the essence of the whistleblower act, you know, I don't want to get cute and try to dance the line. The essence of the act is there's been something done to the detriment of the government. Here, you would have to be able to establish that the payment made by the government was excessive, i.e. the rate. Is there a dichotomy between the whistleblower act on one hand and the jurisdiction of the ICC? Perhaps. But their argument is, since the ICC sets rates, this court, no court, or the legislature can have any enactment that in theory interferes with it. So you basically have a dead whistleblower act. It's in essence, and they say, well, we didn't say it's unconstitutional. They are. Because it's unconstitutional as applied. It's completely ineffective. We in theory, as a utility, could engage in all kinds of misconduct designed to inflate the rate, and frankly, mislead the ICC as well. Is Mr. Eaton saying that, or is he saying in a matter such as this, the ICC and not the circuit court via private plaintiff is the best place to resolve whether or not the rate was proper or not under these circumstances? Well, that presumes, and Mr. Eaton, as always, is a good lawyer, very eloquent, but the bottom line is yes. What he's saying is only the ICC can deal with the issues under the whistleblower act. The whistleblower act does not confer jurisdiction on an administrative body. That's the problem. The ICC, unless I'm missing something, doesn't have the capacity to act as a trial court. If this case stands, and I submit that it should, it goes back to the trial court, and it's not an automatic, okay, give them the money back. There has to be a hearing, number one, were there false reports? People's gas didn't test it. Mr. Novoselsky, what you're saying, if it goes back to the trial court, the damages would be calculated without, I mean, they can't be calculated without retroactively reversing the rates by the ICC. They would have to, as a practical matter, you'd have to ask, it's called disgorgement, whatever profits they made from their falsehood, which is, and again, Consul's correct, it goes back to the Civil War. If you have a contractor who is profiting to the detriment of the government, you make that contractor give the money back to the government. I can't, I'm not going to dance around and say, oh, absolutely not, it doesn't affect the rate. Now, as part of this process, the ICC can decide to suspend a rate, and then we're going to run into the same argument again, they may suspend it, they may order it changed. People's gas will then complain, well, you can't change a rate once you have it in. The bottom line, Justice Burke, is the same as Chief Justice Garvin, and I'm not putting words in the court's mouth, but you asked the question. The question really here is, is there a remedy that can be fashioned by the legislature and put into effect by the utility that is, if you accept it as all facts is true, has conducted itself in a manner that goes back to the 1860s, saying you can't do this. And they're effectively immune from any form of remedial measure. And that remedial measure goes to the people of the state of Illinois, but they can't get it here, because the Commerce Commission can't give it to them. The Commerce Commission can't apply the Whistleblower Act. You, in essence, have a Whistleblower Act that is completely ineffective as to one of the major sources that was intended to protect the gas. Mr. Novoselsky, are the allegedly false reports that the plaintiff identifies in this case, are they even part of the rate making application process? Mr. Eaton has said repeatedly, I've gone through four years, I've never seen it. He does say there is the one case where it's a special circumstance. I'm not aware that there's anything that excludes them, Justice Thomas. I don't see any reason why not. Again, this would be a fact issue, and that's what a trial court does. It decides facts. The ICC is not a trial court. And frankly, it's not something, this is an issue of whether there was a false report submitted, not what normal rate making is. So the ICC is not, we're not going to say the ICC made, should have done A, B, and C. The question is, did, and it's a fact question under the Act, was there a false report filed? Did it have an impact? And the court takes evidence. Then the question is, what's the remedial measure? Is it disgorgement, which is traditional? Yes. What's the alternative? Before that, Mr. Novoselic, isn't there a question about fact pleading in Illinois? Is there anything in your complaint that identifies the reports, what rate hearing we're discussing, how it was used by the ICC? Is there any fact pleading in this complaint at all? It was dismissed at a very preliminary level where the issue really wasn't, is it factually sufficient, it's whether or not the court had jurisdiction to hear it. There was a request made to amend to flush it out clearly. That's before I got into the case. The appellate court, and I think correctly said, under a 615 analysis is only when no set of facts can be pledged that you dismiss it. This again, if you look at the appellate record, if you look at the trial court record, they all focused on the argument you heard today. We are not subject. This is remedial rate making. The case should be dismissed on its face for that reason. But I can't look you in the eye and say, yes, there is a long list of facts. There's nothing that you have been able to identify in your complaint that suggests any kind of hearing, that where safety issues were raised, that anyone relied on these documents. Paragraph 20. Absolutely not. Your complaint is devoid of any kind of detail. Is that correct? I think, as Mr. Eaton pointed out, paragraph 22 addresses the fact that these were considered. Even though the other paragraph says that they weren't submitted at all? Or they weren't prepared? It's not the best reading, Your Honor. I can't look here and say I would have loved to have the opportunity to draft it. But that's under 615. My client should have the opportunity to draft it when the focus of the argument below, as we pointed out, wasn't really the factual sufficiency with whether or not he could file at all. So again, in order to, if you look at the reasoning, even if you look at the dissent, it's all, you can't do this because you can't grant the relief it's rate making, it's retroactive rate making. I'm not so sure that you've sufficiently answered Chief Justice Garmon's question regarding how a trial court is going to determine what part these alleged statements made in the rate making process, and then fashion a remedy out of that as to what to do with the rate. Presumably you would, the court could hear from the people who actually submitted the rate materials, which would be the people's gas employees and management, would be permitted to review evidence that the rate, the reports, the response reports were in fact falsified. Plaintiffs, like any other plaintiff and defendant as well, could bring in expert witnesses to opine the effect that this would have on the overall process. We can't get around the fact that it is going to have an impact, not necessarily on the rate, but on the amount of money that people's gas retained and continues to retain from its rate increase. You can't make an omelet without breaking the egg. We're going to have to break some eggs here. Wouldn't, as a practical standpoint, wouldn't it be an easier way to go in light of what you just reflected that, and again I think Mr. Eaton said, without the financial incentive of the Whistleblower Act for sure, but if Mr. Pusateri had reported this to the ICC and they fashioned whatever penalty they would fashion if indeed the alleged false statements were actually false. Except that is not part of the act, it's not part of the court system, it's not part of the legislation. You're asking the ICC to implement the Whistleblower Act, which they are not, they don't have the jurisdiction to do. And I agree with the court, it might have been Let me just say, I'm not asking anything, but I think Mr. Eaton would say that the Whistleblower Act is not an appropriate way to go when the remedy to be crafted is the changing of a rate. I mean that's the other way to look at it. To which my response would be that you have really undercut the historic and existing basis of the Whistleblower Act. The Whistleblower Act was created, there was a determination made by federal government, by our state government, that we want to have these things reported, we want to create an incentive. Because here you have an employee who's putting his job at risk, he's putting his livelihood at risk, and if the only thing that comes out of this is the ICC might impose a $20 fine or a $100 fine or whatever, that isn't the intent of the act. And I agree that what you're talking about, would it cause the rate to be reduced? No, but it would cause disgorgement, at least as to that portion the court found was affected by this. I really, you know, and I understand Mr. Eaton's position, I could make the same argument with a completely straight face, it's a problem. You have to, there is no way to reconcile, at least in my opinion, to reconcile the Whistleblower Act and the concept that only the ICC can change rates. If we say that we're not changing a rate, we're penalizing them for their false conduct, which is the intent of the act. The extent you allege it's a fraud, isn't it a fraud on the home market? It is, but the act is limited. In other words, we were given a legislative window. I'm not suggesting we expand the act. Could there have been a common law cause of the action? Potentially. Was it filed? No. And that might be a completely different remedy, but again, it's bypassing what has been a critical act for over a hundred years, 150 years. So there is a purpose for this act, which frankly has been, it makes, it's gone. There is no way to impose any type of user user-friendliness or use on this. The Attorney General did take this in 2009 and it took them a while to say, okay, Mr. Boussiteri, you go file it, which is pretty common in a key TAM case, both in the state and federal level. Could you file a separate civil action? Perhaps. That's not what we're here for today. We're here because we believe it's impossible to reconcile these two positions without either, well, I think you have to simply say the act no longer has an application, which is in practical sense saying it's unconstitutional, it has a plot. If the court has no further question, I'm not going to just take a time to take a time. Thank you for your attention. Thank you, counsel. Your Honors, I believe I can reconcile the statute so that the Whistleblower Act is alive and well and that under the Whistleblower Act, it defines the word claim as any request or demand for money or property which is made to the state. That provision is alive and well. Had we sent a bill to the state to pay for something where we had inflated the amount, that would fall within the state. What we're talking about here is a legislative process that ends with a law that applies, as Chief Justice Garmon perhaps raised in her question, to everyone that buys gas, not just to the state. It was not intended to reach something that would be this broad. I think it's this court held in COP versus Exxon Mobil, which is a very important case, is where the agency entrusted with the responsibility to provide for a permit for a reclamation project was then challenged in a private lawsuit by citizens. This court was faced with the issue of how do we reconcile the two, particularly when the private lawsuit was challenging whether the permit should have been issued in the first place. This court properly reconciled those two provisions by finding that the citizen's suit in that case would be limited to whether, one, the person was operating without a permit or, two, in violation of the permit. That reconciled the two provisions because this court believed it was important to have the people who were issuing the permit had the expertise to do it. I think it was the only Department of Natural Resources in that case. Likewise here, as this court found in Shetland, you look at the expertise of the commission to decide this particular issue. And when you're dealing with a fraud on the home market, the ICC is the best equipped to make those types of determinations. And what they can do ultimately is within their because of this report on a fault safety report, what are they going to do? They're in the best position to make that determination. And that's why the legislature has given them the exclusive jurisdiction. All we are saying here is that this is not a claim within the definition of making the process. We're just pointing out the policy implications of doing it. And the nightmare that that would create with the uncertainty of base rates that are set by an agency that has that type of expertise. So we would respectfully request that this court reverse the appellate court and affirm the lower court's dismissal with prejudices. Thank you very much. Thank you. Case number 116844, People of the State of Illinois, XRL, Joseph Pusateri versus People's Gas, Light, and Coke Company will be taken under advisement as agenda number 15. Mr. Eden and Mr. Wieselski, thank you for your arguments today. You're excused at this time. Marshal, the Supreme Court stands adjourned until 9 30 tomorrow morning.